# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |
|---|---|
| ARIGNA TECHNOLOGY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>Bayerische Motoren Werke AG and BMW of North America, LLC,<br><br>Defendants. | Case No. 2:21-cv-00172-JRG<br><br>JURY TRIAL DEMANDED<br><br>Oral Argument Requested |

## DEFENDANT BAYERISCHE MOTOREN WERKE AG'S
## MOTION TO DISMISS PURSUANT TO RULES 12(b)(5) AND 12(b)(6)

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...........................................................................................1

II.    FACTUAL BACKGROUND .........................................................................2

III.    LEGAL STANDARD.....................................................................................3

    A.    Rule 12(b)(5)........................................................................................3

    B.    Rule 12(b)(6) and the *Iqbal*/*Twombly* Pleading Standard.......................4

IV.    ARGUMENT ..................................................................................................4

    A.    Insufficient Service of Process.............................................................4

        1.    Serving BMW AG Through BMW NA Via CT Corporation in California Is Insufficient ............................................................ 5

    B.    Failure to State a Claim.......................................................................14

        1.    Rule 12(b)(6) and the Iqbal/Twombly Pleading Standard...................... 14

        2.    Arigna's Direct Infringement Claims Against BMW AG Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim .................. 15

        3.    Arigna's Indirect Infringement Claims Against BMW AG Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim............. 19

        4.    Arigna's Willful Infringement Claims Against BMW AG Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim .................. 22

V.    CONCLUSION...............................................................................................22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................4, 14, 15

*Aten Int'l Co. v. Emine Tech. Co.*,
  261 F.R.D. 112 (E.D. Tex. 2009).........................................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................2, 4, 14, 15

*Blue Spike, LLC v. ASUS Comput. Int'l, Inc.*,
  No. 6:16-CV-1384-RWS-KNM, 2018 WL 3301705 (E.D. Tex. Feb. 20,
  2018), *report and recommendation adopted*, 2018 WL 1443783 (E.D. Tex.
  Mar. 23, 2018)..............................................................................................5, 6, 7, 21

*Chapterhouse, LLC v. Shopify, Inc.*,
  No. 2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018)................16, 17, 18

*Cont'l Auto. Sys., Inc. v. Avanci, LLC*,
  No. 3:19-cv-02933-M, Dkt. 301 (N.D. Tex. July 5, 2020)....................................10

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
  No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) .................20, 21

*CoreBrace LLC v. Star Seismic LLC*,
  566 F.3d 1069 (Fed. Cir. 2009)............................................................................12

*Fractus, S.A. v. TCL Corp.*,
  No 2:20-CV-00097-JRG, 2021 WL 2483155 (E.D. Tex. June 2, 2021)................................22

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321 (Fed. Cir. 2010)............................................................................20

*Global-Tech Appliances, Inv. v. SEB S.A.*,
  563 U.S. 754 (2011).............................................................................................20

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S.Ct. 1923 (2016)..........................................................................................22

*IDS Prop. Cas. Ins. Co. v. Gree USA, Inc.*,
  No. 18-1313, 2018 WL 6605896 (D. Minn. Dec. 17, 2018) ................................7, 8

*In re Katrina Canal Breaches Litig.*,
    309 F. App'x 833 (5th Cir. 2009) (per curiam) ........................................................3

*Keranos, LLC v. Analog Devices, Inc.*,
    2011 U.S. Dist. LEXIS 102618 (E.D. Tex. Sep. 12, 2011) ....................................12

*Lab. Corp. of Am. Holdings v. Chiron Corp.*,
    384 F.3d 1326 (Fed. Cir. 2004)..............................................................................12

*Lisson v. ING GROEP N.V.*,
    262 F. App'x 567 (5th Cir. 2007) .................................................................5, 7, 13

*United States ex rel. Miller v. Pub. Warehousing Co. KSC*,
    636 F. App'x 947 (9th Cir. 2016) ...........................................................................11

*MobileMedia Ideas LLC v. HTC Corp.*,
    No. 2:10-cv-112-TJW, 2011 U.S. Dist. LEXIS 104892 (E.D. Tex. Sep. 15,
    2011) ........................................................................................................................3

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
    526 U.S. 344 (1999).................................................................................................3

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    843 F.3d 1315 (Fed. Cir. 2016)..............................................................................20

*Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*,
    No. 4:19-cv-876-SDJ, 2020 U.S. Dist. LEXIS 215341 (E.D. Tex. Nov. 17,
    2020) ........................................................................................................................1

*Rothschild Connected Devices Innovations, LLC v. ADS Sec., L.P.*,
    No. 2:15-cv-01431-JRG-RSP, 2019 U.S. Dist. LEXIS 158361 (E.D. Tex.
    Aug. 13, 2019) ....................................................................................................3, 12

*Ruby Sands LLC v. Am. Nat'l Bank of Tex.*,
    No. 2:15-cv-1955, 2016 U.S. Dist. LEXIS 83897 (E.D. Tex. Jun. 28, 2016) ..........2

*Sanyal v. Toyota Motor Corp.*,
    No. 1:14cv906, 2014 WL 4925842 (E.D. Va. Sept. 30, 2014).................................8

*Sheets v. Yamaha Motors Corp. U.S.A.*,
    891 F.2d 533 (5th Cir. 1990) .................................................................................13

*SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
    No. 2:20-CV-00003-JRG, 2020 WL 6578411 (E.D. Tex. June 15, 2020) .......13, 14

*SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
    No. 2:20-CV-00003-JRG, Dkt. 18 (E.D. Tex. May 11, 2020) ................................13

*Stragent, LLC v. BMW of N. Am., LLC*,
    No. 6:16-CV-446-RWS-KNM, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017)......................20

*Tierra Intellectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*,
    No. 2:13-CV-44-JRG, 2014 WL 1233040 (E.D. Tex. Mar. 24, 2014)...................................21

*UNM Rainforest Innovations v. D-Link Corp.*,
    No. 6-20-CV-00143-ADA, 2020 WL 3965015 (W.D. Tex. July 13, 2020).............5, 6, 12, 13

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
    486 U.S. 694 (1988) ..............................................................................................3, 4, 7

**State Cases**

*Gen. Motors Corp. v. Superior Ct.*,
    15 Cal. App. 3d 81 (Ct. App. 1971).......................................................................10

*Tang v. CS Clean Sys. AG*,
    No. D052943, 2008 WL 5352253 (Cal. Ct. App. Dec. 23, 2008) .......................9, 10

*Yamaha Motor Co. v. Super. Ct.*,
    174 Cal. App. 4th 264 (2009) ...............................................................................10

**State Statutes**

Cal. Corp. Code § 2110 (West)..................................................................................9

**Rules**

Fed. R. Civ. P. 12(b)(5)..................................................................................1, 3, 5

Fed. R. Civ. P. 12(b)(6).......................................................................... *passim*

## <u>STATEMENT OF ISSUES TO BE DECIDED BY THE COURT PURSUANT TO</u> <u>LOCAL RULE 7(a)(1)</u>

1) Whether the Court should dismiss this patent case under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process because Plaintiff Arigna Technology Limited failed to serve Defendant Bayerische Motoren Worke AG, a foreign company, pursuant to the Hague Convention, which is required under Texas law and due process in the Fifth Circuit.

2) Whether the Court should dismiss this patent case under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff Arigna Technology Limited's Complaint fails to state a claim upon which relief can be granted.

## I.     INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6), Bayerische Motoren Werke AG ("**BMW AG**") moves to dismiss Plaintiff Arigna Technology Limited's ("Arigna") Complaint for improper venue and failure to state a claim.

*First*, the Complaint should be dismissed for insufficient service of process under Rule 12(b)(5). Despite having promptly and properly served BMW AG, a German company, via the Hague Convention in another case before this Court, Arigna refuses to serve BMW AG via the Hague Convention now. Instead, Arigna made a legally insufficient and roundabout attempt to serve BMW AG through BMW of North America, LLC ("**BMW NA**") via CT Corporation in California. Under Texas law (which governs in this matter), Arigna's service attempt is insufficient because neither CT Corporation nor BMW NA is an alter ego or authorized agent for service of BMW AG. Moreover, Arigna's service attempt would violate due process, which, under Fifth Circuit law, requires that a domestic subsidiary of a foreign parent must be the alter ego of the parent to serve as an involuntary agent for service.

*Second*, the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim. Arigna's Complaint contends, regarding direct infringement, that certain BMW products incorporate automotive-grade, self-oscillating half-bridge drivers (the "Accused Devices") that infringe the asserted claims. However, aside from reciting the claim language word-for-word, the Complaint contains insufficient factual allegations to establish that the identified BMW products actually use the third-party Accused Devices, let alone how the Accused Devices actually infringe any asserted claims. As a result, the Complaint fails to provide factual allegations to serve as fair notice of any plausible claim of infringement. *See, e.g., Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*, No. 4:19-cv-876-SDJ, 2020 U.S. Dist. LEXIS 215341, *7-8 (E.D. Tex. Nov. 17, 2020) (stating that fair notice "requires the plaintiff to plausibly allege that the accused products

1

meet each and every element of at least one claim of the asserted patent") (internal quotation marks omitted); *see also Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, No. 2:15-cv-1955, 2016 U.S. Dist. LEXIS 83897, *12 (E.D. Tex. Jun. 28, 2016) ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).[1]

## II.    FACTUAL BACKGROUND

Arigna filed the Complaint in this action on May 20, 2021, accusing BMW AG[2] of infringing U.S. Patent No. 7,049,850 (the "'850 Patent") by selling certain vehicles that allegedly incorporate particular semiconductor devices used in auto parts, such as vehicle power modules. *See* Complaint, ¶¶ 32-46. The same day, Arigna filed two separate cases asserting the same patent: (1) No. 2:21-cv-00174, alleging infringement against General Motors, Nissan, and Honda entities, and (2) No. 2:21-cv-00175, alleging infringement against Mercedes and Volkswagen entities.

Arigna has also filed three other lawsuits against BMW AG in last few months, two in this Court and one in the International Trade Commission (ITC): (1) Case No. 2:21-cv-00054 on February 28, 2021, accusing BMW AG of infringing U.S. Patent. Nos. 7,397,318 and 8,247,867 (the "'867 Patent"); (2) Case No. 2:21-cv-00173 on May 20, 2021, accusing BMW AG of infringing U.S. Patent. No. 8,289,082 (the "'082 Patent"); and (3) ITC Investigation No. 337-TC-1267, accusing BMW AG of infringing the '867 and '082 Patent. Arigna's other complaints against BMW AG present many of the same issues for this Court as this case, including regarding

---

[1] BMW AG notes that, contemporaneously herewith, BMW NA has filed an identical motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). BMW NA has also moved to dismiss or transfer the case for improper venue. If BMW NA is transferred to another court due to venue being improper, then BMW AG should be transferred along with BMW NA, given that the infringement allegations against the two are identical.
[2] BMW AG and BMW NA are collectively referred to as "BMW" in the Complaint. *Id.*, ¶ 4.

service, venue, discovery from overlapping third-party suppliers, and general subject matter. To that end, the two other complaints Arigna filed against BMW AG in this Court suffer similar deficiencies as Arigna's allegations here, so BMW AG moved to dismiss the -054 case under the same Rules (*See* No. 2:21-cv-00054, Dkt. 88).[3] The -173 case has been stayed. NO. 2:21-CV-00173-JRG, Dkt. 44.

## III.    LEGAL STANDARD

"Motions to dismiss are purely procedural questions to which the Federal Circuit applies the law of the regional circuit." *MobileMedia Ideas LLC v. HTC Corp.*, No. 2:10-cv-112-TJW, 2011 U.S. Dist. LEXIS 104892, at *2 (E.D. Tex. Sep. 15, 2011) (citation omitted).

### A.    Rule 12(b)(5)

Courts cannot exercise jurisdiction over an improperly served defendant. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999); *see also Rothschild Connected Devices Innovations, LLC v. ADS Sec., L.P.,* No. 2:15-cv-01431-JRG-RSP, 2019 U.S. Dist. LEXIS 158361, *18 (E.D. Tex. Aug. 13, 2019) (observing that "service of the complaint and summons" is a "procedural requirement"). Accordingly, Rule 12(b)(5) authorizes dismissal of an action for insufficient service of process. Fed. R. Civ. P. 12(b)(5). Once a defendant has challenged service, the plaintiff bears the burden of establishing its validity. *In re Katrina Canal Breaches Litig.*, 309 F. App'x 833, 835 (5th Cir. 2009) (per curiam). Where service of process requires transmission of a judicial document abroad, the Hague Convention applies if the destination country is a signatory member. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698-99 (1988) (hereinafter "*Schlunk*"). The internal law of the forum state determines whether a foreign entity could be

---

[3] The Rule 12(b)(5) insufficient service portion of BMW AG's motion to dismiss in the -054 case is now moot, as Arigna properly served BMW AG under the Hague Convention during briefing, demonstrating that Arigna can accomplish proper service without significant delay or expense, and without unduly burdening this Court. *See* No. 2:21-cv-00054, Dkt. 150 at 1-2; Dkt. 150-1.

properly served through an involuntary agent within the United States without implicating the Hague Convention. *Id*. at 700.

### B.    Rule 12(b)(6) and the *Iqbal/Twombly* Pleading Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). This "plausibility" standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

## IV.    ARGUMENT

### A.    Insufficient Service of Process

Arigna attempted to serve BMW AG by delivering documents to CT Corporation in California on May 21, 2021, apparently claiming that CT Corporation is BMW AG's registered agent. Dkt. 5 at 1; Dkt. 6 at 1. BMW AG has no registered agent, CT Corporation or otherwise, in the State of California. Declaration of Bernhard Göbel ("Göbel Decl."), ¶ 18. Accordingly, CT Corporation sent a rejection letter to Arigna's counsel, indicating that it was not authorized to receive service of process for BMW AG. Declaration of Alexandre C. Halow ("Halow Decl."), ¶ 7; Ex. 2.

BMW AG informed Arigna that this attempt at service were improper and not in compliance with the Hague Convention. Indeed, in the -054 case, Arigna was promptly able to complete proper service. *See* No. 2:21-cv-00054, Dkt. 150 at 1-2; Dkt. 150-1. So far, however, it does not appear as if Arigna is attempting proper Hague Service in this case, and BMW AG has

not received any service of process through the Hague Convention. BMW AG would not, for purposes of this action, challenge service properly performed under the Hague Convention, and the portion of this Motion to Dismiss under Rule 12(b)(5) would be moot should such proper service be effected.

### 1. Serving BMW AG Through BMW NA Via CT Corporation in California Is Insufficient

#### a. Service Through BMW NA is Insufficient Under Texas Law Because BMW NA is Not the Alter Ego of BMW AG

Under the law of the forum state, Texas, service on BMW AG through BMW NA's registered agent in California, CT Corporation, is improper because BMW NA is not BMW AG's agent or alter ego under Texas or federal law. BMW NA is a separate and independent business entity from BMW AG and, therefore, is not capable of receiving service for BMW AG without authorization under Texas law. *Blue Spike, LLC v. ASUS Comput. Int'l, Inc.*, No. 6:16-CV-1384-RWS-KNM, 2018 WL 3301705, at *5-6 (E.D. Tex. Feb. 20, 2018), *report and recommendation adopted*, 2018 WL 1443783 (E.D. Tex. Mar. 23, 2018) (holding that service via a U.S. subsidiary is insufficient because its foreign parent did not authorize it to accept service of process on the parent's behalf); *UNM Rainforest Innovations v. D-Link Corp.*, No. 6-20-CV-00143-ADA, 2020 WL 3965015, at *4 (W.D. Tex. July 13, 2020) (hereinafter "*D-Link*") (finding that indirect service on a foreign corporation through its domestic subsidiary that is not an alter ego of the foreign corporation would violate "due process protections afforded by the United States Constitution").

Nor is BMW NA an implied agent or alter ego of BMW AG. The Fifth Circuit has held that a domestic subsidiary may be considered an agent for service of process, absent express authorization, only where "[the] foreign corporation exercises such control over the domestic subsidiary that the two entities are essentially one." *Lisson v. ING GROEP N.V.*, 262 F. App'x 567, 570 (5th Cir. 2007); *see also D-Link*, 2020 WL 3965015, at *4 ("[A] foreign corporation

receives proper service through its domestic subsidiary where the evidence shows that one is the agent or alter ego of the other." (citation omitted)).

Arigna has not met its burden to prove that BMW NA is the alter ego of BMW AG. The Complaint only alleges "BMW NA is a wholly owned subsidiary of BMW AG and is responsible for importing, marketing, distributing, and selling automotive vehicles and components from BMW-managed brands (e.g., BMW, Rolls-Royce, etc.) in the United States." Complaint, ¶ 3. Texas courts have made it clear that a foreign parent's ownership of a U.S. subsidiary is not sufficient to establish an alter-ego relationship and justify indirect service on a foreign parent. *See, e.g.*, *Blue Spike*, 2018 WL 3301705, at *7-8 (holding that service of a Taiwanese company via its U.S. subsidiary's registered agent is legally insufficient even though the foreign parent owns 100 percent of the domestic subsidiary's stock); *D-Link*, 2020 WL 3965015, at *4 (denying alternative service through a domestic subsidiary despite 100 percent stock ownership).

The clear separation between BMW AG and BMW NA is undeniable.[4] At the outset, BMW NA is not a direct wholly owned subsidiary of BMW AG as Arigna implies in the Complaint (Complaint, ¶ 3)—BMW AG does not directly own or hold any BMW NA stock or any other interest in BMW NA. Göbel Decl., ¶¶ 4, 7. BMW AG and BMW NA also do not hold themselves out as the same corporation. *Id.*, ¶¶ 3-4. The daily operations of BMW AG and BMW NA are separate, with each entity having its own management team. *Id.*, ¶¶ 5-6, 8. BMW AG has a Board

---

[4] "Texas courts look at the following factors to determine whether the parent and subsidiary are alter egos of one another: (1) whether there are distinct adequately capitalized units; (2) whether daily operations are separate; (3) if formal barriers exist between management; (4) whether the corporations file consolidated tax returns; (5) whether the parent owns the subsidiary's stock; (6) whether the two share common officers and directors; (7) the extent to which books and accounts are separate; (8) whether the officers and directors of one corporation determine the policies of the other; (9) whether the corporations hold themselves out as the same corporation; and (10) whether they have separate shareholder and director meetings." *Blue Spike*, 2018 WL 3301705, at *6 (citation omitted).

of Managers who manage the business of BMW AG, none of whom are officers or directors of BMW NA. *Id*., ¶ 8. BMW AG and BMW NA maintain separate procedures and policies for their respective operations. *Id.*, ¶ 9. BMW AG does not maintain BMW NA's books and records, nor does it file BMW NA's tax returns. *Id*., ¶ 10.

And as to CT Corporation, it is not a registered service agent for BMW AG anywhere in the United States, and thus is not allowed to receive service for BMW AG without authorization under Texas law (which it does not have). *Lisson*, 262 F. App'x at 569. CT Corporation also has no relationship with BMW AG to start an alter-ego analysis. Barring any such relationship, service on BMW AG is improper under Texas and Fifth Circuit law. *Blue Spike*, 2018 WL 3301705, at *7-8 (finding indirect service under an alter-ego theory insufficient because the evidence did not show that the separation between the corporations is fiction).

### b. Texas Law Should Govern Whether Service is Proper on a Foreign Defendant Through an Involuntary Agent

Arigna may argue that, because it attempted service on BMW AG by purporting to serve BMW NA through its agent CT Corporation in California, then California law should apply. This argument, however, misinterprets Supreme Court precedent. *See Schlunk*, 486 U.S. at 697-99. In *Schlunk*, the Supreme Court decided whether a foreign national could be served through an involuntary agent within the United States without implicating the Hague Convention. *Id. Schlunk* clarifies that, although a plaintiff may ***generally*** have the option to serve a corporation within the United States following either the law of the state where the district court is located or the law of the state where service is made, they must, in the ***specific*** instance where involuntary service is being made on a foreign defendant residing in a country that is a signatory to the Hague Convention, follow the law of the forum state. *IDS Prop. Cas. Ins. Co. v. Gree USA, Inc.*, No. 18-1313 (DSD/ECW), 2018 WL 6605896, at *2 (D. Minn. Dec. 17, 2018) ("*Schlunk* plainly states

7

that a court must look to the 'forum state's' internal law to determine whether foreign document transmittal abroad is required under the Hague Convention." (citation omitted)).

Under *Schlunk*, Texas law, not California law, must govern Arigna's attempt at service on BMW AG through its related entity's—BMW NA's—registered agent. [5] Indeed, following *Schlunk*, courts in other jurisdictions have rejected plaintiffs' attempts to assert the law of the state where service is made in justifying domestic service through an unauthorized agent on foreign defendants. *See, e.g.*, *id.* at *1, *3 (applying Minnesota law instead of California law when service was purportedly made in California); *Sanyal v. Toyota Motor Corp.*, No. 1:14cv906 (JCC/JFA), 2014 WL 4925842, at *1 & n.2 (E.D. Va. Sept. 30, 2014) (applying Virginia law instead of California law when the plaintiff attempted to serve a Japanese company through its U.S. subsidiary in California).

Arigna brought this case in the Eastern District of Texas, which makes Texas the forum state. BMW AG is a resident of Germany, a signatory to the Hague Convention. [6] BMW AG has not authorized BMW NA or any registered agent of BMW NA's in California to receive service on its behalf. Therefore, Arigna must follow Texas law if it attempts to serve BMW AG through an unauthorized agent like BMW NA or CT Corporation within the United States. And, as discussed above, service under Texas law is insufficient. *See supra* Section IV.A.2.a.

   c. **Service Through BMW NA is Also Insufficient Under California Law Because BMW NA is Not a "General Manager" of BMW AG**

---

[5] In *Schlunk*, the service attempt at issue was made in Illinois, pursuant to an Illinois statute, for a case brought in Illinois. By contrast, Arigna is attempting to effect service in one state for a case it chose to file in another forum. There is inequity in Arigna voluntarily choosing this forum, but not abiding its law.

[6] Arigna could serve BMW AG under the Hague Convention, but thus far has chosen not to, because it believes it has found a way around the Hague Convention. Arigna's approach to service, allowing foreign defendants to be served through any domestic affiliate in California no matter where a case is located, would effectively nullify the Hague Convention.

Even if this Court chooses to consider whether attempted service on BMW AG (through BMW NA via BMW NA's agent CT Corporation in California) is proper under California law, where service was purportedly made, such attempted service should still be found defective. California statutes allow a plaintiff to serve a foreign corporation by delivering a copy of the process to its ***general manager***. *See* Cal. Corp. Code § 2110 (West). A "general manager" within the meaning of California statute includes individuals and "distinct business entities that in effect manage the defendant's business affairs in California." *Tang v. CS Clean Sys. AG*, No. D052943, 2008 WL 5352253, at *4 (Cal. Ct. App. Dec. 23, 2008) (citation omitted). However, attempted service of BMW AG through BMW NA, as BMW AG's "general manager," is defective because BMW NA is not a "general manager" of BMW AG under California law. *See id.* at *5-6.

This case is analogous to *Tang*. In *Tang*, the plaintiff attempted to serve CS Clean Systems AG ("**CSAG**"), a German corporation, by serving CSAG's subsidiary, CS Clean Systems, Inc. ("**CSI**"), in California. *Id*. at *1. The relationship between CSI, a Nevada corporation headquartered in California and the exclusive distributor of certain CSAG products in the United States, and CSAG is similar to BMW NA's relationship with BMW AG. *Id*. at *1-2. The summons was personally delivered to CSI's agent for service of process. *Id*. at *1. Despite this, a California court determined that service was inappropriate because CSI had no relation to the injury alleged in the plaintiff's complaint. *Id.* at *5. The court reasoned that CSI cannot reasonably be deemed CSAG's "general manager" because "neither CSI nor [its agent] had management responsibilities vis-à-vis the operations at issue in Tang's lawsuit." *Id*.

Much like CSI in *Tang*, BMW NA has no "management responsibilities" to the BMW AG activities at issue in this lawsuit. BMW AG is accused of patent infringement because of its use of third-party Accused Devices. It is the third-party Accused Devices that allegedly practice the

asserted patents. BMW NA's operations are directed to distribution of BMW vehicles to dealers, as well as marketing and providing support for those vehicles sold in the United States. BMW NA is not engaged in the design and manufacture of the accused BMW vehicles, and it has no involvement in the selection or use of the third-party Accused Devices at issue. Göbel Decl., ¶ 6.

Stated differently, following the reasoning in *Tang*, BMW NA cannot be characterized as a general manager over BMW AG's operations for purposes of service of process in this lawsuit because the alleged injury arose from operations (e.g., BMW AG incorporating components that allegedly include certain third-party Accused Devices into certain BMW products) that are ***divorced*** from any operations that BMW NA arguably "manage[s]" for BMW AG (e.g., vehicle distribution in the United States). 2008 WL 5352253, at *5. Because of its detachment from BMW AG's operations that led to this lawsuit, BMW NA is not "of sufficient character and rank to make it reasonably certain that [BMW AG] would be apprised of the service of process" in this particular matter. *Cf. Cont'l Auto. Sys., Inc. v. Avanci, LLC*, No. 3:19-cv-02933-M, Dkt. 301 at 4-5 (N.D. Tex. July 5, 2020) (finding Sharp USA is a general manager of Sharp Japan for purposes of service of process because Sharp USA's active involvement in the patent licensing at issue made it reasonably certain that Sharp USA would apprise Sharp Japan of the service of process in California).

Moreover, no consensus exists under California law as to whether a domestic subsidiary may qualify as a "general manager" of its foreign parent. *Compare Gen. Motors Corp. v. Superior Ct.*, 15 Cal. App. 3d 81, 86 (Ct. App. 1971) (clarifying that "[t]he term 'general manager of a corporation' indicates one who has general direction and control of the business of the corporation as distinguished from one who has the management only of a particular branch of the business"), *with Yamaha Motor Co. v. Super. Ct.*, 174 Cal. App. 4th 264, 271 (2009). The Ninth Circuit has

recognized a split in California law over the issue. *United States ex rel. Miller v. Pub. Warehousing Co. KSC*, 636 F. App'x 947, 948 (9th Cir. 2016) (admitting that California lower court decisions "have been less than perfectly consistent"). Even the line of cases that determine a domestic subsidiary may qualify as the "general manager" of its foreign parent "requires a sufficiently close connection with the parent." *Id.* at 949.

Here, BMW NA does not serve as BMW AG's general manager under any interpretation of California law. Under the first interpretation, BMW NA lacks direction or control over BMW AG. Göbel Decl., ¶ 11. Under the second interpretation, unlike the recent *Continental Automotive* decision that applied this line of cases and apparently featured direct ownership of a domestic subsidiary by its foreign parent (*see Cont'l Auto.*, Dkt. 301 at 1, 4), BMW NA is not a direct wholly owned subsidiary of BMW AG—BMW AG does not directly own or hold any BMW NA stock or any other interest in BMW NA. Göbel Decl., ¶¶ 4, 7. Instead, as shown below, four intermediary entities separate BMW AG from BMW NA. *Id.*, ¶ 7 Therefore, BMW NA lacks a sufficiently close connection to BMW AG and fails to qualify as BMW AG's "general manger" under any interpretation of California law.



**d. Service of BMW AG Through BMW NA Violates Due Process**

Apart from state law considerations, permitting indirect service on a foreign corporation through a domestic subsidiary that is not the alter ego of the foreign corporation would violate "due process protections afforded by the United States Constitution." *D-Link*, 2020 WL 3965015, at *4. Whether proper service has been accomplished is a "procedural requirement" subject to Fifth Circuit law. *See Rothschild Connected Devices*, 2019 U.S. Dist. LEXIS 158361, *18; *see also Aten Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 118 n.2 (E.D. Tex. 2009) (citing *Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1330 (Fed. Cir. 2004)); *Keranos, LLC v. Analog Devices, Inc.*, 2011 U.S. Dist. LEXIS 102618, at *17 (E.D. Tex. Sep. 12, 2011) (citing *CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1072 (Fed. Cir. 2009). Thus, Fifth Circuit law applies to whether Arigna's attempted service in this case violates due process.

Regardless of what California law says, this Court and others in the Fifth Circuit have held

that a domestic subsidiary of a foreign parent "must be the alter ego of the parent" to serve as an involuntary agent for service to comply with due process.

For example, in *SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, plaintiff Simo requested permission to serve a foreign defendant via a New York-based U.S. subsidiary, just like Arigna attempts here.[7] No. 2:20-CV-00003-JRG, 2020 WL 6578411, at *1 (E.D. Tex. June 15, 2020). Without considering whether New York law allowed such service, this Court looked immediately to the due process inquiry under Fifth Circuit law, concluding that "the Court does not find that service on [domestic subsidiary] satisfies due process in regard to the [foreign defendants]." *Id*. at *3.

Likewise, in *D-Link*, the plaintiff also proposed the same method of service Arigna attempts here—specifically, service on a foreign entity via its U.S.-based subsidiary. *D-Link*, 2020 WL 3965015, at *1. The court explicitly rejected this attempted method, finding that plaintiff's (and Arigna's) "proposed means of alternative service fails to satisfy the due process requirements afforded by the United States Constitution." *Id*. at *4. Citing Fifth Circuit law interpreting due process, the court found that, for service on a foreign entity via a U.S.-subsidiary to comply with due process, the two entities must be alter egos. *Id.* (citing *Lisson*, 262 Fed. App'x. at 570 (5th Cir. 2007)); *see also Sheets v. Yamaha Motors Corp. U.S.A.,* 891 F.2d 533, 536 (5th Cir. 1990) (finding service on a foreign entity via a U.S.-subsidiary complies with due process "as long as a foreign corporation exercises such control over the domestic subsidiary that the two entities are essentially one, process can be served on a foreign corporation by serving its domestic subsidiary — without sending documents abroad.").

---

[7] *See also SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, No. 2:20-CV-00003-JRG, Dkt. 18 at 6 (E.D. Tex. May 11, 2020) (stating that uCloud America is incorporated in New York).

On the other hand, *Continental Automotive* did not address the Fifth Circuit's interpretation of due process, where the due process argument was only raised "in passing." *Cont'l Auto.*, Dkt. 301 at 6 n.4. Accordingly, even if California or Ninth Circuit courts have found that service on a non-alter ego U.S. subsidiary complies with due process, the Fifth Circuit interprets due process more narrowly, and this Court should follow Fifth Circuit precedent, as it previously has. *See SIMO Holdings,* 2020 WL 6578411, at *3.

As discussed above, BMW NA is a distinct entity from BMW AG; BMW NA is not the alter ego of BMW AG. *See supra* Section IV.A.1.a. Therefore, permitting indirect service on BMW AG through BMW NA would violate due process under Fifth Circuit precedent, which applies in this Court.

In sum, Arigna's attempt at service on BMW AG through BMW NA via CT Corporation in California is insufficient, and as a result, the Court should dismiss the case against BMW AG. Alternatively, because Arigna has demonstrated its ability to promptly serve BMW AG in Germany, and because such service has not yet been effected, the Court should quash Arigna's improper service attempt, order Arigna to complete its service on BMW AG in Germany via the Hague Convention, and stay all further deadlines in the case until after BMW AG has been served.

**B.    Failure to State a Claim**

**1.    Rule 12(b)(6) and the *Iqbal*/*Twombly* Pleading Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). This "plausibility" standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility of "entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

### 2.    Arigna's Direct Infringement Claims Against BMW AG Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim

Arigna failed to plead sufficient facts to "state a claim to relief that is plausible on its face". *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Instead, Arigna pleaded only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice." *Id*. In particular, Arigna accuses BMW AG of direct infringement, alleging that certain BMW products incorporate allegedly infringing third-party semiconductor devices. Complaint, ¶¶ 34, 39, 40. But these allegations suffer fatal flaws: first, the Complaint fails to establish whether the identified *BMW products* actually use the third-party semiconductor devices, and second, the Complaint fails to show how such semiconductor components actually infringe. Thus, with these missing links from accused components to BMW's products, the Complaint fails to plead sufficient factual allegations from which the Court may draw a reasonable inference of direct infringement. *Iqbal*, 556 U.S. at 678.

### a.    Arigna's Direct Infringement Claims Lack Sufficient Factual Allegations

Arigna accuses certain BMW products (the BMW i3 and X5) of using the Infineon AUIR2085S device that allegedly infringes the '850 Patent. Complaint, ¶¶ 30, 40, 43. Notably missing from the Complaint, however, are factual allegations attempting to show that (a) the AUIR2085S is actually used in the identified BMW products, and (b) how or why the AUIR2085S actually meets the elements of the asserted claim. *See Iqbal*, 556 U.S. at 678 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").

*First*, the Complaint pleads merely conclusory statements. The only allegations pleaded in

support of direct infringement comprise a single paragraph parroting the asserted claim language, followed by repetition of that same claim language broken down by element—with no mapping to the BMW products. Complaint, ¶¶ 36-38. Specifically, Arigna alleges that BMW AG infringes "at least claim 7," and Arigna's infringement "allegations" almost exclusively parrot that claim with no additional substantive language, as shown below (identical language in bold and underline):

| Language of Claim 7 (Complaint, ¶ 36) | Infringement Allegations (*Id.*, ¶¶ 37-38) |
| --- | --- |
| **[a] semiconductor device** performing drive control of **first and second switching devices connected in series and interposed between a high main power potential and a low main power potential**, comprising: | The AUIR2085S is **a semiconductor device** that controls **first and second switching devices connected in series and interposed between a high main power potential and a low main power potential**. |
| **a high potential part** including a control part **configured to control conduction/non-conduction of a high side switching device** which is one of said first and second switching devices; | Further, the Infineon AUIR2085S includes **a high potential part** that is **configured to control conduction/non-conduction of a high side switching device**, |
| **a reverse level shift part configured to level-shift a signal from** said **high potential part** to supply the level-shifted signal to **a low side logic circuit operating on the basis of said low main power potential**; | and **a reverse level shift part** that is **configured to level shift a signal from** a **high potential part to a low side logic circuit operating on the basis of said low main power potential**. |
| and a **voltage detecting device** provided in said high potential part and **configured to detect a potential at an output** line of said **reverse level shift part and to supply a logic value based on** said **potential** for said **control part**, | A **voltage detecting device** in the AUIR2085S is **configured to detect a potential at an output** of the **reverse level shift part and to supply a logic value, based on** the **potential** of the output, to the **control part**, |
| **thereby** causing said control part **to control conduction/non-conduction of** said **high side switching device**. | **thereby** allowing the AUIR2085S **to control** the **conduction/non-conduction of** the **high side switching device**. |

This Court has unambiguously rejected pleadings like these from Arigna's Complaint as being insufficient to link the accused products to the asserted claims. For example, in *Chapterhouse, LLC v. Shopify, Inc.*, the E.D. Tex. held that the plaintiff's simple repeating of the claim language

"on its own," absent accompanying factual allegations, "is a mere conclusory statement" and insufficient to state a plausible claim. No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018). The Court indicated that "the more complicated [the involved] claims and technology" are, the more the complaint must provide "in order to lay out sufficient factual allegations which might permit the Court to find that the *Iqbal/Twombly* standard is met." *Id*.

Like *Chapterhouse*, this case involves complicated technology—the '850 Patent concerns semiconductor devices including voltage detecting devices configured for fault detection in high-voltage switching devices. Complaint ¶¶ 24, 26. Indeed, asserted claim 7 spans 18 lines ('850 Patent, 25:56-26:6) and recites numerous elements—this level of complexity requires "materially more than the bare bones allegations" in Arigna's Complaint. *Chapterhouse*, 2018 WL 6981828, at *2. Yet, Arigna makes only "a mere conclusory statement" that the identified BMW products incorporate the AUIR2085S, and alleges that the AUIR2085S meets every element of the asserted claim by simply parroting the claim language "on its own." *Id*. For example, Arigna merely alleges that "the inner power module of the BMW i3 incorporates the infringing Infineon AUIR2085S" without providing any evidentiary basis that this is so. Complaint, ¶ 40. Arigna then adds a photo of an integrated circuit board without a title or caption to indicate the board's origins, let alone its supposed origination from a BMW product. Complaint, Figure 9 (below).



This photo simply labels a nondescript component of the depicted circuit board so small that it is effectively unidentifiable as AUIR2085S. Regarding the accused BMW X5, Arigna alleges even less; the Complaint includes no specific facts supporting an allegation that the BMW X5 includes the accused AUIR2085S. Arigna's Complaint therefore fails to plead sufficient factual allegations to meet the *Iqbal*/*Twombly* pleading standard. *Chapterhouse*, 2018 WL 6981828, at *2.

Indeed, in *Chapterhouse*, the court dismissed the plaintiff's claim even though the plaintiff provided supporting screenshots for every element. *Chapterhouse*, 2018 WL 6981828, at *2. Arigna's Complaint provides far less—only the barely understandable image of the alleged BMW i3 component above and one screenshot of the accused Infineon device. Complaint, Figure 8 (below).



And this screenshot fails to show where any claim limitations allegedly exist in the AUIR2085S—it merely shows a webpage that lists the AUIR2085S's benefits and potential applications. *Id.*

*Second*, Arigna's Complaint includes factual allegations throughout which, if all true, are *contradictory* and cannot plausibly allege direct infringement. Arigna first describes that "[i]n a traditional gasoline engine, the throttle regulates the amount of air that flows into the engine," and "[t]he semiconductor device protected by the '850 Patent is used in an engine's control module to control the throttle plate and ensure it can properly open and close." Complaint, ¶ 26. Confusingly, Arigna then alleges that the BMW i3, which includes electric variants ***with no gasoline engine***, infringes the '850 Patent, *id.*, ¶ 40, and shows a screenshot describing an electric motor. *Id.*, Figure 10. Arigna has not explained how a patent purporting to assist the function of a gasoline engine can be infringed by a vehicle powered only by electric motors, which do not consume gasoline, do not include an air intake, and, on information and belief, do not require a throttle plate.

For these reasons, Arigna's direct infringement allegations do not state a plausible claim.

### 3. Arigna's Indirect Infringement Claims Against BMW AG Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim

For induced infringement, one must plead (1) underlying direct infringement by another;

and (2) that the defendant undertook an affirmative act to encourage infringement, with knowledge that its actions would cause infringement. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016); *see also Stragent, LLC v. BMW of N. Am., LLC*, No. 6:16-CV-446-RWS-KNM, 2017 WL 2821697, at *3 (E.D. Tex. Mar. 3, 2017) (citing *Global-Tech Appliances, Inv. v. SEB S.A.*, 563 U.S. 754, 766 (2011) for the proposition that "it is not enough that an accused inducer merely intends to cause others to perform certain acts which are ultimately found to infringe."). For contributory infringement, one must plead "1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

Here, Arigna's indirect infringement allegations fail at least because (1) Arigna does not sufficiently plead direct infringement, as explained above; and (2) Arigna fails to plead sufficient facts to support the remaining elements for induced infringement or contributory infringement. For example, Arigna's induced infringement allegations center on a single screenshot of nontechnical language that allegedly "instruct[s] end users how to use the BMW i3's accelerator pedal," a self-explanatory task. Complaint, ¶ 43. But Arigna does not allege ***any nexus*** between using the accelerator pedal or any other instructions from BMW AG and the '850 Patent. The mere provision of instructions by an accused infringer without allegations of how the instructions direct customers to use those products ***in an infringing manner*** is insufficient to create a reasonable inference of specific intent for an induced infringement claim. *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015). Indeed, Arigna's allegations, even if true, are contradictory and therefore cannot establish the knowledge and intent elements for inducement. Specifically, on one hand, Arigna alleges the '850 Patent is used to assist

20

the operation of a "traditional gasoline engine," Complaint, ¶ 26, but on the other hand alleges that BMW knowingly infringed and intentionally induced others to infringe the '850 Patent by using vehicles "powered exclusively by [an] electric motor." *Id.*, ¶ 43 and Figure 10.

Arigna has not explained how BMW AG could intend for users of an electric motor to infringe a patent purportedly directed to the function of a "traditional gasoline engine." Nor does Arigna explain how BMW AG instructs customers to use third-party chips deep within vehicle power components (over which customers have no control) in ways that specifically infringe the asserted patent. *See id.*, ¶ 42. Thus, Arigna's induced infringement allegations fail.

For contributory infringement, Arigna alleges ***without any factual support*** that the components in the accused vehicles, including the Infineon AUIR2085S, "are especially made or especially adapted for uses that infringe the '850 Patent, and not staple articles or commodities of commerce suitable for substantial non-infringing use." *Id.*, ¶ 44. But the accused vehicles no doubt have substantial noninfringing uses. *Tierra Intellectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*, No. 2:13-CV-44-JRG, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) (finding entire phone "no doubt does have substantial noninfringing uses"). As for the components and the Infineon device, Arigna's conclusory allegations fail to state a claim even under the most liberal standard. *Blue Spike*, 2018 WL 3301705 at *2 (inference from software package names insufficient to save deficient conclusory allegations of no substantial noninfringing purpose). According to the Infineon datasheet, Complaint, ¶35, Fig. 8, potential applications for the AUIR2085S include: Automotive 48V DC-DC; Automotive 12V DC-DC; Exhaust; Piezo Injection; and Solenoid Injection, but Arigna only accuses use of the chip in an "inner power module." *Id.*, ¶40. Thus, Arigna falls short of stating a claim of contributory infringement. *See Core Wireless Licensing S.A.R.L.*, 2015 WL 4910427 at *5 (finding failure to state a claim where complaint was "devoid

of any facts from which the Court can plausibly infer that any components of the products being sold have 'no substantial non-infringing uses.'").

### 4. Arigna's Willful Infringement Claims Against BMW AG Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim

Willful infringement "is a matter of culpability and state of mind" and requires more than mere notice of patent infringement allegations. *Fractus, S.A. v. TCL Corp.*, No 2:20-CV-00097-JRG, 2021 WL 2483155, at *4 (E.D. Tex. June 2, 2021) (dismissing willful infringement claim because no culpable conduct alleged). Arigna mentions willful infringement only once in the Complaint outside of the prayer for relief, Complaint, ¶ 43, and Arigna pleads no facts plausibly suggesting BMW AG acted with "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, [or] flagrant" intent. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S.Ct. 1923, 1932 (2016). Nor could it, as BMW AG does not design or manufacture the allegedly infringing semiconductor device. Moreover, BMW AG cannot have the requisite intent for its customers to infringe a patent directed towards a "traditional gasoline engine," Complaint, ¶ 26, by using a vehicle with an electric motor. *See, id*, ¶ 43, Figure 10. Thus, because the Complaint "does not allege any culpable conduct or any set of facts supporting an inference of culpable conduct," Arigna has failed to state a claim for willful infringement. *Fractus*, 2021 WL 2483155 at *4.

## V.    CONCLUSION

Because Texas law governs Arigna's attempt at service, the roundabout attempt on BMW AG through BMW NA via CT Corporation in California is insufficient. Moreover, Arigna's service attempt would violate due process as interpreted by the Fifth Circuit. Additionally, Arigna has failed to sufficiently state a claim for direct or indirect infringement. For the foregoing reasons, BMW AG respectfully requests that the Court dismiss Arigna's Complaint.

Dated: July 14, 2021

Respectfully submitted,

*/s/Lionel M. Lavenue*

Lionel M. Lavenue
Virginia Bar No. 49,005
lionel.lavenue@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, VA 20190
  Phone:  (571) 203-2700
  Fax:     (202) 408-4400

**ATTORNEY FOR DEFENDANT
BAYERISCHE MOTOREN WERKE AG**

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2021, I caused the foregoing **DEFENDANT BAYERISCHE MOTOREN WERKE AG'S MOTION TO DISMISS PURSUANT TO RULES 12(b)(5) AND 12(b)(6)** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/Lionel M. Lavenue*

Lionel M. Lavenue