**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ARIGNA TECHNOLOGY LIMITED, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:21-CV-00172-JRG |
| | § | (LEAD CASE) |
| BAYERISCHE MOTOREN WERKE AG, BMW OF NORTH AMERICA, LLC, | § | |
| | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 2:21-CV-00174-JRG |
| | § | (MEMBER CASE) |
| GENERAL MOTORS LLC, HONDA MOTOR COMPANY, LTD., AMERICAN HONDA MOTOR COMPANY, INC., NISSAN MOTOR COMPANY, LTD., NISSAN NORTH AMERICA, INC., | § | |
| | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 2:21-CV-00175-JRG |
| | § | (MEMBER CASE) |
| DAIMLER AG, MERCEDES-BENZ USA, LLC, VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AG, | § | |
| | § | |
| *Defendants.* | § | |

<u>**ORDER**</u>

Before the Court is Defendant Bayerische Motoren Werke AG's ("BMW AG") Motion to

Dismiss Pursuant to Rules 12(b)(5) and 12(b)(6) (the "Motion"). (Dkt. No. 23). After considering

the parties' briefing and the applicable law, the Court finds that the Motion should be **GRANTED-IN-PART** and **DENIED-IN-PART** for the reasons set forth herein.

## I.    BACKGROUND

Plaintiff Arigna Technology Limited ("Arigna") filed its Complaint for Patent Infringement (the "Complaint") against BMW AG and its subsidiary BMW of North America, LLC ("BMW NA") on May 20, 2021. (Dkt. No. 1). In the Complaint, Arigna alleges that BMW AG and BMW NA infringe U.S. Patent No. 7,049,850 (the "'850 Patent") entitled "Semiconductor Device with a Voltage Detecting Device to Prevent Shoot-Through Phenomenon in the First and Second Complementary Switching Devices." (*Id.* at ¶¶ 23–27, 32–46). Arigna identifies vehicles such as the BMW i3, the BMW X5, and components therein that utilize the International Rectifier (Infineon) AUIR2085S semiconductor device as exemplar vehicles and components that allegedly infringe the '850 Patent (the "Accused Products"). (*Id.* at ¶¶ 30, 39–41).

On May 21, 2021, Arigna served BMW NA in California by delivering documents to CT Corporation, BMW NA's registered agent for service of process. (Dkt. No. 7 at 1; Dkt. No. 23-3 at 2). On the same day, Arigna also attempted service on BMW AG in California in the same manner—by delivering documents to CT Corporation, the registered agent of BMW NA. (Dkt. No. 6 at 1). On June 6, 2021 and June 15, 2021, BMW AG and BMW NA applied for and received extensions of time to answer or respond to Arigna's Complaint. (Dkt. Nos. 14, 15, 16, 17).

On July 14, 2021, BMW AG filed the Motion asserting improper service and failure to state a claim of direct, indirect, and willful infringement. (Dkt. No. 62 at 1). On July 21, 2021, Arigna and BMW AG agreed to stay the briefing and resolution of the improper service issues in this case until two weeks after the resolution of similar issues in Case No. 2:21-cv-00054. (Dkt. Nos. 30, 33). However, the Court found the improper service issues in Case No. 2:21-cv-00054

2

moot on December 16, 2021 in light of differences in both Arigna's method of service and in the procedural posture of that case. (Case No. 2:21-cv-00054, Dkt. No. 391). Accordingly, briefing resumed in the above-captioned case with Arigna filing its Response to the Motion regarding the improper service issues on December 30, 2021. (Dkt. No. 143). BMW AG's Reply and Arigna's Sur-Reply followed, and briefing was completed on January 12, 2022. (Dkt. Nos. 151, 157).

## II.    LEGAL STANDARDS

### A.  Motion to Dismiss Under Rule 12(b)(5)

In order for a court to exercise jurisdiction over a defendant, a plaintiff must serve that defendant with process according to Rule 4 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 4. In the absence of such process, a defendant may move to dismiss a case under Federal Rule of Civil Procedure 12(b)(5). *See Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999). In order to avoid dismissal, the plaintiff must make a *prima facie* showing of proper service. *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992).

### B.  Motion to Dismiss Under Rule 12(b)(6)

Under the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Court can dismiss a complaint that fails to meet this standard. Fed. R. Civ. P. 12(b)(6). To survive dismissal at the pleading stage, a complaint must state enough facts such that the claim to relief is plausible on its face. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads enough facts to allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, plausibility should not be treated as a "probability requirement at the pleading stage; it simply calls

for enough fact[s] to raise a reasonable expectation that discovery will reveal" the defendant is liable for the misconduct alleged. *In re Bill of Lading Transmission & Processing Sys. Patent Lit.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) (quoting Twombly, 550 U.S. at 556). The Court accepts well-pleaded facts as true and views all facts in the light most favorable to the plaintiff but is not required to accept the plaintiff's legal conclusions as true. *Id.*

In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "The court may consider 'the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.'" *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) (quoting *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

In the context of patent infringement, a complaint must place the alleged infringer on notice of what activity is being accused of infringement. *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017). However, the plaintiff is not required to prove its case at the pleading stage. *Id.* Assessing the sufficiency of pleadings is a context specific task; simpler technologies may require less detailed pleadings, while more complex technologies may demand more. *Disk Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018).

## III.    DISCUSSION

### A.  Arigna's Service was Proper Under Rule 4(e)(1)

The parties disagree regarding which law should apply to determine whether Arigna's method of service is proper. BMW AG argues that Texas law should apply because this Court—the forum court—sits in Texas. (Dkt. No. 23 at 7). Arigna argues that California law should apply

4

because the plain language of Federal Rule of Civil Procedure 4(e)(1) authorizes service according to the laws of "the state . . . where service is made." Fed. R. Civ. P. 4(e)(1). For the reasons stated below, the Court finds that the Federal Rules permit service pursuant to California law, that California law authorizes service upon a general manager, and that Arigna properly served BMW AG via its general manager.

### 1.   The Federal Rules of Civil Procedure Authorize California Law to Apply to Service in this Case.

BMW AG argues that, under *Volkswagenwerk Aktiengesellschaft v. Schlunk*, the law of state in which the forum court sits—here Texas—must apply where a plaintiff is attempting involuntary service on a foreign defendant residing in a country that is a signatory to the Hague Convention. (Dkt. No. 23 at 7–8) (citing 486 U.S. 694, 697–99, 700–01 (1988); *IDS Prop. Cas. Ins. Co. v. Gree USA, Inc.*, 2018 WL 6605896, at *2 (D. Minn. Dec. 17, 2018)). BMW AG's argument relies on *Schlunk*'s directive to look to "the internal law of the forum state" to determine whether the applicable method of service requires transmittal of documents abroad and therefore implicates the Hague Convention. *Schlunk*, 486 U.S. at 699.

Arigna responds that BMW AG's argument misreads *Schlunk*'s references to a "forum state." (Dkt. No. 143 at 10) (citing *Nationwide Mut. Ins. Co. v. Gree USA, Inc.*, 2019 WL 1244093, at *3 (W.D. Pa. Mar. 1, 2019), *rep't and rec. adopted*, 2019 WL 1243280 (W.D. Pa. Mar. 18, 2019); *Erie Ins. Exch. v. Gree USA, Inc.*, 2019 WL 1405854, at *4 (M.D. Pa. Mar. 28, 2019)). As *Schlunk* recognized, the Hague Convention refers to its signatories as "states," and the Supreme Court referred to "this country's . . . internal laws" when discussing a "forum's internal law." *Schlunk*, 486 U.S. at 699, 705. Arigna asserts that the "forum state" and "internal law" referenced in *Schlunk* mean the law of the "forum country." (Dkt. No. 143 at 11). Arigna argues that it has properly served BMW AG pursuant to the laws of this country—the Federal Rules of Civil

5

Procedure and the laws of California—and therefore its method of service within the United States complies with *Schlunk* and does not implicate the Hague Convention. (*Id.*).

The Court agrees with Arigna that *Schlunk*'s references to "forum state" are properly read in the context of the Hague Convention which defines its signatory countries as "states." *Schlunk*, 486 U.S. at 698–99, 705 (citing 20 U.S.T. 362, T.I.A.S. 6638). Accordingly, so long as the internal law of the United States authorizes "substituted service that provides 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections,'" such service is proper and does not implicate the Hague Convention. *Id.* at 705; *see also Nationwide*, 2019 WL 1244093, at *3.

Further, the plain language of the Federal Rules of Civil Procedure permit service under the law of the place where service takes place—in this case California. *See Rothschild Connected Devices Innovations LLC v. ADS Sec., L.P.*, 2019 U.S. Dist. LEXIS 158361, at *18–19 (E.D. Tex. Aug. 13, 2019) (noting that the Federal Rules allow a plaintiff to execute service pursuant to either the law of the forum or the law of the state where service is made). Service on a foreign corporation, partnership, or association is controlled by Federal Rule of Civil Procedure 4(h). Rule 4(h) contemplates two scenarios: service on a foreign corporation made (1) at a place within a judicial district of the United States or (2) at a place outside the United States. Fed. R. Civ. P. 4(h)(1)–(2). In the former scenario, a "foreign corporation, or a partnership or other unincorporated association . . . must be served . . . in a judicial district of the United States . . . in a manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A).

Rule 4(e)(1), in turn, permits an individual to be "served in a judicial district of the United States by . . . following state law for serving summons in an action brought in courts of general jurisdiction in the state where the district court is located *or where service is made*." Fed. R. Civ.

P. 4(e)(1) (emphasis added). Here, service was made on BMW AG in California. (Dkt. No. 6 at 1). The Federal Rules therefore authorize service pursuant to California law in this case.

BMW AG argues against the application of the plain language of Rule 4(e)(1) and asserts that "under Rule 4(e), a federal court normally looks either to a federal statute or to the long-arm statute of the State in which it sits to determine whether a defendant is amenable to service." (Dkt. No. 151 at 1–2) (citing *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 108 S. Ct. 404, 410 (1987)). However, as Arigna acknowledges, BMW AG's assertion relies on case law interpreting the pre-1993 version of Rule 4(e). (Dkt. No. 157 at 2–3). Such arguments ignore the amendments to Rule 4(e) which expressly authorize the mode of service which BMW AG now opposes. Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment ("First, the revised rule authorizes the use of any means of service provided by the law not only of the forum state, but also of the state in which a defendant is served . . . . **Subdivision (e).** . . . Paragraph (1) authorizes service in any judicial district in conformity with state law. This . . . authorize[s] the use of the law of the state in which the district court sits, but adds as an alternative the use of the law of the state in which service is effectuated.") The Court therefore finds BMW AG's arguments unpersuasive and concludes that Arigna may utilize service under California law as the law of the state in which service was effectuated.[1] Accordingly, the Court addresses whether Arigna properly served BMW AG pursuant to California law.

---

[1] The Court likewise finds unpersuasive BMW AG's reliance on *Lovett v. Sanderson*, 184 F.3d 819 (5th Cir. 1999) and *Bounty-Full Ent., Inc. v. Forever Blue Ent. Grp., Inc.*, 923 F. Supp. 950, 956–57 (S.D. Tex. Apr. 1, 1996)—neither of which addresses the service dispute at issue in this case but rather interprets the "minimum contacts" test to subject a defendant to personal jurisdiction.

## 2.   Arigna Properly Served BMW AG via its General Manager Pursuant to California Law

California law authorizes service of process on a corporation by delivering a copy of the

summons and the complaint to "a general manager" of the corporation. Cal. Code of Civ. Proc.

§ 416.10(b); Cal. Corp. Code § 2110 (authorizing service in California upon a foreign corporation

via its "general manager in [the] state"). The California Supreme Court has identified a "general

manager" for service of process as an agent who (1) is "of sufficient character and rank to make it

reasonably certain that defendant would be apprised of the service" and (2) has "given [the

defendant] substantially the business advantages that it would have enjoyed if it conducted its

business through its own offices or paid agents in the state." *Cosper v. Smith & Wesson Arms Co.*,

53 Cal. 2d 77, 83–84 (1959) (quotation omitted). "California and federal district courts have relied

on the 'character and rank' and 'substantially the business advantages' language from *Cosper* in

more than a dozen cases since *Cosper* was decided in 1959." *Falco v. Nissan N. Am. Inc.*, 987 F.

Supp. 2d. 1071, 1074 (C.D. Cal. 2013); *see also Yamaha Motor Co. v. Super. Ct.*, 174 Cal. App.

4th 264, 274–75 (2009); *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F. Supp. 2d 1224,

1227 (C.D. Cal. 2008); *Gray v. Mazda Motor of Am., Inc.*, 560 F. Supp. 2d 928, 931 (C.D. Cal.

2008); *Xun v. Daimler AG*, 2020 WL 6784526, at *1 (C.D. Cal. Sept. 3, 2020).[2]

First, the Court finds that BMW NA is "of a sufficient character and rank to make it

reasonably certain that [BMW AG] would be apprised of the service" to satisfy the first factor

under California law. *Cosper*, 53 Cal. 2d at 83. BMW NA is BMW AG's point of contact within

---

[2] Contrary to BMW AG's assertion that "no consensus exists under California law as to whether a domestic subsidiary may qualify as a 'general manager' of its foreign parent," the Court finds that domestic subsidiaries often meet the criteria under California law, as in this case, to be a "general manager" and are therefore deemed agents authorized to receive service of process on behalf of their foreign parent. *See also Xun*, 2020 WL 6784526, at *1–2; *Hatami v. Kia Motors Am. Inc.*, 2008 WL 4748233, at *2 (C.D. Cal. Oct. 29, 2008); *iCall, Inc. v. Reliance Comms. Ltd.*, 2010 WL 11583236, at *7 (N.D. Cal. Sept. 16, 2020).

the United States for product development, product and warranty support, and the provision of English product manuals to customers. (Dkt. No. 143 at 5; Dkt. No. 28-8 at 23). Tellingly, BMW AG's "BMW Group Report 2020" indicates that BMW AG has "direct or indirect control" over BMW NA in addition to 100% of the capital investment in BMW NA. (Dkt. No. 143-3 at 37, 269, 272). Further, BMW NA and its authorized dealers "safe guard and promote the reputation of [BMW AG] Products, the trademarks of [BMW AG], and the [BMW AG] brand" to such a degree that BMW NA is "BMW [AG]'s agent with respect to trademark matters." (Dkt. No. 28-8 at 12). BMW NA supplies "[BMW AG] Service and Warranty Information booklet[s]" to customers purchasing BMW AG vehicles, ensures that vehicles supplied by BMW AG "will be warranted to the customer[s]", and indemnifies BMW centers for damage "claimed to have been caused by an alleged defect in the design, manufacture, or assembly of BMW Products" manufactured by BMW AG. (Dkt. No. 28-8 at 23, 37, 54).

Under this first factor, Arigna has sufficiently shown "that there would be ample regular contact" between BMW AG such that BMW NA is reasonably likely to apprise BMW AG of service of process. *Halo Elecs., Inc. v. Bel Fuse Inc.*, 2010 WL 2605195, at *2 (N.D. Cal. June 28, 2010); *see also* Yamaha, 174 Cal. App. 4th at 274 (finding that an entity that "ha[s] an exclusive arrangement to sell the manufacturer's products, provides warranty service [and] English owner manuals, does testing, marketing, and receives complaints about the manufacturer's products" is reasonably certain to "apprise" manufacturer of process).

Under the second factor, the Court finds that BMW NA "has given [BMW AG] substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state." *Cosper*, 53 Cal. 2d at 84; *see also Continental Auto. Sys., Inc. v. Avanci*, LLC, No. 3:19-cv-02933-M, Dkt. 301 at 3–5 (N.D. Tex. July 5, 2020).

9

BMW NA is the "exclusive importer and distributor of [BMW AG] products in the United States." (Dkt. No. 23-1 at ¶ 6; Dkt. No. 28-8 at 5; Dkt. No. 143-4 at 1). As such, "BMW NA's operations are directed to distribution of BMW [AG's] vehicles to dealers, as well as marketing and providing support for those vehicles sold in the United States." (Dkt. No. 23 at 10). BMW NA "is responsible for distribution decisions concerning the United States" and therefore BMW AG enjoys the benefits of BMW NA's decisions as if it were conducting business through its own offices in California. (Dkt. No. 23-1 at ¶ 6). The Court finds that BMW NA provides a "continuous flow of business into the United States" for the benefit of BMW AG such that the second *Cosper* prong is satisfied. *Halo*, 2010 WL 2605195, at *2.

BMW AG argues that BMW NA cannot be its general manager for service of process under California law because the alleged injury in this lawsuit arose from operations (e.g., BMW AG incorporating components into its vehicles and manufacturing the Accused Products) that are divorced from any operations that BMW NA arguably manages for BMW AG (e.g., vehicle distribution in the United States). (Dkt. No. 23 at 10) (citing *Tang v. CS Clean Sys. AG*, 2008 WL 5352253, at *4 (Cal. Ct. App. Dec. 23, 2008)). Arigna responds that the injuries in its Complaint include more than the mere design and incorporation of allegedly infringing semiconductor devices into the Accused Products. (Dkt. No. 143 at 11–12). Rather, Arigna's injury includes the "importing, marketing, distributing, and selling [of] automotive vehicles and components" that allegedly infringe the '850 Patent within the United States. (Dkt. No. 1 at ¶ 3). The Court agrees with Arigna and finds that—as the "exclusive importer and distributor of [BMW AG] products in the United States"—BMW NA manages the operations of BMW AG directly at issue in this case. (Dkt. No. 23-1 at ¶ 6; Dkt. No. 28-8 at 5; Dkt. No. 143-4 at 1).

Finally, BMW AG argues that BMW NA cannot be its general manager because BMW AG "lacks direction or control over BMW AG" and "does not directly own or hold any BMW NA stock or other interest in BMW NA." (Dkt. No. 23 at 11) (citing Dkt. No. 23-1 at ¶ 11). Arigna responds that BMW AG's own records contradict the assertion that it lacks direction or control over BMW NA. (Dkt. No. 143 at 13). Further, Arigna argues that whether BMW AG directly or indirectly owns BMW NA is irrelevant to the general manager analysis. (*Id.*). As discussed above, the Court finds that BMW AG's own documents reveal that it has direct or indirect control over BMW NA. (Dkt. No. 143-3 at 37, 269, 272; Dkt. No. 143-5 at 26, 29). The Court further agrees with Arigna that the degree of separation of BMW AG's ownership over BMW NA does not change the result of the general manager inquiry. *See Khachatryan*, 578 F. Supp. 2d at 1227 (differentiating between service based upon status as a subsidiary and service based upon status as a general manager). Accordingly, the Court finds that BMW NA is BMW AG's general manager for the purpose of receiving service of process under California law and Arigna's method of service was proper under state law.

### 3.  Arigna's Service upon a General Manager of BMW AG Satisfies Due Process

BMW AG argues that even if the Federal Rules permit service pursuant to California law, and even if Arigna properly served BMW AG pursuant to such law, this Court should still disregard Arigna's service because it does not comply with the Fifth Circuit's interpretation of Due Process. (Dkt. No. 23 at 12–14). BMW AG asserts that—under Fifth Circuit law—a domestic subsidiary may be considered an agent for service of process, absent express authorization, only where "[the] foreign corporation exercises such control over the domestic subsidiary that the two entities are essentially one." *Lisson v. ING GROEP N.V.*, 262 F. App'x 567, 570 (5th Cir. 2007);

*see also SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 2020 WL 6578411, at *1 (E.D. Tex. June 15, 2020).

The Court finds this argument unpersuasive. First, it is generally accepted that complying with Federal Rule of Civil Procedure 4 as to service raises a presumption that due process has been provided.[3] Further, the Court's ruling that service is proper on BMW AG rests on the basis that the domestic entity being served is a "general manager" of BMW AG under California law and is therefore deemed to be an agent authorized to receive service on its behalf in California. A general manager, as discussed above, has "a very broad definition" which can "include domestic sales representative(s) and local distributor(s) of a foreign corporation." *Hatami*, 2008 WL 4748233, at *2. "General managers may be domestic distributors, salesmen or advertisers, or customer service liaisons of foreign manufacturers even if the foreign-domestic relationship is 'casual' or 'non-exclusive' as long as the domestic entity provides the foreign entity an open channel for the regular flow of business from the foreign entity into California." *Brighton Collectibles, Inc. v. Winston Brands, Inc.*, 2013 WL 394060, at *6 (S.D. Cal. Jan. 30, 2013) (collecting cases).

BMW AG's argument relies on Fifth Circuit case law interpreting service on a foreign corporate defendant through its domestic subsidiary based solely on its relationship as the defendant's domestic subsidiary. *See Lisson* 262 F. App'x at 569, 571 ("Lisson claims that ING Financial is a domestic subsidiary of ING Groep and is thus capable of receiving service on ING

---

[3] Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment (noting that "the methods of service so authorized always provide appropriate notice to persons against whom claims are made"). Here, Arigna has met its burden to show that its method of service complies with Rule 4. While the due process inquiry is a separate analysis that applies to all methods of service, the fact that Arigna's service is consistent with the Federal Rules indicates that BMW AG received "appropriate notice" of the claims made against it.

Groep's behalf.")[4]; *Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 537 (5th Cir. 1990).[5]

However, the Court finds that "this has no import for the present case because [Arigna's] contention that service on [BMW AG] may be made upon [BMW NA] is not premised on the parent-subsidiary relationship between the two companies. Rather, . . . [Arigna] assert[s] that [BMW AG] may be served via [BMW NA] because [BMW NA] is a 'general manager' under California law." *Falco*, 987 F. Supp. 2d at 1075. A finding that BMW NA is BMW AG's general manager requires that it be "reasonably certain that the defendant will be apprised of the service made." *Cosper*, 53 Cal. 2d at 83; *Falco*, 987 F. Supp. 2d at 1076. Due Process, in turn, "requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Schlunk*, 486 U.S. at 707 (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). As clearly evidenced by BMW AG's requests for extensions of the time to answer and the filing of the present Motion, service upon BMW AG via its general manager pursuant to California law provided BMW AG with "notice reasonably calculated under all the circumstances, to apprise interest parties of

---

[4] The Court notes that, pursuant to 5th Cir. R. 47.5, the Fifth Circuit designated *Lisson* as non-precedential opinion that "should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4," which do not apply to this case. *See Lisson*, 262 F. App'x at 568. If the Fifth Circuit had meant otherwise, no such designation would be necessary—this Court must construe the impact of *Lisson* within the parameters designated by the Fifth Circuit. Thus, it has no precedential effect. Nonetheless, this Court finds that its Order comports with the reasoning of *Lisson* which found that the defendant "sought to be served must have actually authorized another to accept service of process on [its] behalf." *Id.* at 569–70. As discussed above, BMW AG has authorized BMW NA to accept service on its behalf by making it its general manager pursuant to California law for purposes of service of process in California.

[5] The Court also notes that in *Sheets*, the Fifth Circuit was specifically performing a "more thorough analysis" of *Schlunk* in the context of reviewing a motion for sanctions. *Sheets*, 891 F.2d at 536–37. The Fifth Circuit quotes the language "as long as a foreign corporation exercises such control over the domestic subsidiary that the two entities are essentially one, process can be served on a foreign corporation by serving its domestic subsidiary" to indicate that such was the standard under the controlling Illinois long-arm statute at interest in *Schlunk*. *Id.* Notably, the Fifth Circuit declined to "delv[e] into whether [state] law permits service of a foreign corporation by serving its domestic subsidiary." *Id.* Instead, *Sheets* notes that the plaintiff never served the domestic subsidiary and instead attempted service by mailing documents directly to the foreign parent company—a situation the Fifth Circuit found squarely within the scope of the Hague Convention and one very different to the situation at issue in this case. *See id.*

the pendency of the action and afford them an opportunity to present their objections" and satisfied the Due Process standard. *Id.* Accordingly, BMW AG's Motion under Rule 12(b)(5) is **DENIED**.

### B. 12(b)(6)

#### 1. Direct Infringement

"To establish infringement of a patent, every limitation set forth in a claim must be found in an accused product or process exactly or by a substantial equivalent." *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990). "To state a claim for direct infringement, a plaintiff must explicitly plead facts to plausibly support the assertion that a defendant 'without authority makes, uses, offers to sell, or sells any patented invention during the term of the patent.'" *Opticurrent, LLC v. Power Integrations, Inc.*, 2016 WL 9275395, at *3 (E.D. Tex. Oct. 19, 2016) (citing 35 U.S.C. § 271(a); Fed. R. Civ. P. 8(a); *Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the ground upon which it rests.'" *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

First, BMW AG argues that the Complaint fails to make "factual allegations attempting to show that (a) the AUIR2085S is actually used in the identified BMW products, and (b) how or why the AUIR2085S actually meets the elements of the asserted claim." (Dkt. No. 23 at 15). BMW AG provides a table comparing the language of Claim 7 of the '850 Patent with the allegations in paragraphs 37 and 38 of the Complaint to assert that Arigna merely parrots the claim language to allege infringement. (*Id.* at 16). BMW AG then argues that such makes Arigna's Complaint analogous to the complaint this Court rejected in *Chapterhouse, LLC v. Shopify Inc.* because Arigna merely repeats the claim language "on its own" without any "accompanying factual

allegations." (*Id.* at 16–17) (citing 2018 U.S. Dist. LEXIS 219072, at *5–6 (E.D. Tex. Dec. 10, 2018)). Further, BMW AG asserts that photographs included in Arigna's Complaint provide "far less" than the complaint in *Chapterhouse* and "fail[] to show where any claim limitations allegedly exist in the AUIR2085S." (*Id.* at 17–19).

In response, Arigna argues that its allegations exceed the pleading standard because the Complaint identifies: (1) "the asserted patent and claim"; (2) "the technology covered by the patent"; (3) "the infringing activity"; (4) "the accused product"; and (5) "how the accused product infringes." (Dkt. No. 31 at 3–4) (citing *Opticurrent*, 2016 WL 9275395, at *4; *Lifetime Indus., Inc. v. Trim-Lok, Inc.,* 869 F.3d 1372, 1379 (Fed. Cir. 2017)). Arigna asserts that its Complaint raised a factual dispute regarding whether the AUIR2085S is actually used in BMW products by identifying "the accused functionality and infringing semiconductors by manufacturer and product name (i.e., the Infineon AUIR2085S), by the automotive systems and components in which they are located and function (e.g., inner power modules), and by the BMW automobiles in which these 'automotive-grade, self-oscillating half-bridge driver[s]' are installed, used, imported, offered for sale, and sold (e.g., the BMW i3 and BMW X5). (Dkt. No. 31 at 5) (citing Dkt. No. 1 at ¶¶ 24, 26, 33, 34, 39–44). Arigna also distinguishes its Complaint from that in *Chapterhouse* by noting that this case concerns tangible inventions while *Chapterhouse* involved intangible software claims and products. (*Id.* at 6). (quoting *Uniloc USA, Inc. v. Avaya Inc.*, 2016 WL 7042236, at *3 (E.D. Tex. May 13, 2016) ("Cases involving tangible inventions and relatively straightforward claims may require less detail to state a claim and provide fair notice . . . [compared to] cases involving more nebulous, less tangible inventions.") (internal citations omitted)). Arigna further argues that its Complaint is more detailed than the complaint in *Opticurrent*, which also involved semiconductor technology and survived the 12(b)(6) stage. (*Id.* at 7–8).

15

Further, BMW AG argues that Arigna's allegations are contradictory to its claims of infringement and thus the Complaint cannot plausibly allege direct infringement. (Dkt. No. 23 at 19). Specifically, BMW AG points out that some variants of the alleged BMW i3 are electric with no gasoline engines and potentially no throttle plates; accordingly, BMW AG asserts that Arigna has not shown how a semiconductor device used in an engine's control module to ensure the throttle plate can properly open and close could be infringed by vehicles with electric motors. (*Id.*) (citing Dkt. No. 1 at ¶¶ 26, 40, Fig. 10). Arigna responds that any contradiction is illusory because (1) BMW AG concedes that some models of the BMW i3 do contain gasoline engines, (2) electric vehicles that incorporate the AUIR2085S on their inner power module still infringe, and (3) BMW's argument attempts to limit as asserted claim to one non-limiting embodiment. (Dkt. No. 31 at 8–9).

Overall, the Court finds that Arigna's allegations of direct infringement are not so fatally deficient to justify dismissal for failure to state a claim. Contrary to BMW AG's assertion, Arigna has pled factual allegations that do more than merely parrot the claim language of the '850 Patent to assert infringement. Arigna identifies the asserted patent and describes the elements of a representative claim. (Dkt. No. 1 at ¶¶ 23–24, 36). The Complaint then identifies the technology covered by the '850 Patent as a "semiconductor device that consists of a voltage detecting device configured to control the conduction and non-conduction of a high side switching device by detecting a potential and supplying a logic value based on that potential." (*Id.* at ¶ 26). Arigna then identifies that such technology covered by the '850 Patent has applications "in . . . a vehicle's engine control module to control the throttle plate of the engine." (*Id.*).

After describing the technology at issue, Arigna identifies the specific tangible chipset that performs the functions covered by the '850 Patent: the "International Rectifier (Infineon)

AUIR2085S" which "is an automotive-grade, self-oscillating half-bridge driver" allegedly utilized in BMW AG's products and components. (*Id.* at ¶ 34–35). With respect to the AUIR2085S chipset, Arigna provides a screenshot and links to Infineon's website describing the chip's specifications, data sheets, and internal mapping. (*Id.* at 12).[6] Arigna identifies with particularity the accused products alleged to infringe the '850 Patent—such as the BMW X5, the BMW i3, and the inner power module thereof. (*Id.* at 30, 40, 41). Finally, Arigna identifies how BMW AG infringes by designing, manufacturing, importing, and selling "vehicles and components thereof that incorporate the International Rectifier (Infineon) AUIR2085S [chipset]" which "is used in an engine's control module to control the throttle plate and ensure it can properly open and close." (*Id.* at 26, 34).

The Court additionally finds this case distinguishable from *Chapterhouse*. There, the complaint merely stated the language of "an exemplary claim for each patent" and "[broke] the exemplary claim into individual elements with 'supporting' screenshots" with no other assertion or explanation of how the accused system claims were linked to the accused software. *See Chapterhouse,* 2018 WL 6981828, at *2–3. First, the tangible technology at issue here requires "less detail to state a claim and provide fair notice to the infringer." *Uniloc*, 2016 WL 7042236, at *3. Second, the Complaint in this case goes beyond that in *Chapterhouse* by identifying the technology at issue, the Defendant's allegedly infringing activity, the specific components at issue within the Accused Products, and how the Accused Products infringe. (Dkt. No. 1 at ¶¶ 23–24, 26, 30, 34–36, 40–41). Finally, the Court notes that there is no requirement for Plaintiff to include photographs to state a claim for infringement, that the included photographs at least display a

---

[6]  *See also*  https://www.infineon.com/cms/en/product/power/gate-driver-ics/auir2085s/#!diagrams  (cited  in Complaint).

representative inner power module, and that the Complaint provides links to schematic diagrams and data sheets for the semiconductor device at issue. (*See* Dkt. No. 1 at Fig. 8, Fig. 9).

Arigna has "has identified the asserted patent and claim, described the technology covered by the patent, identified the infringing activity, identified the accused product, and identified how the accused product infringes." *Opticurrent*, 2016 WL 9275395 at *4. By identifying a particular feature (the AUIR2085S chipset which controls the engine's throttle plate) from a particular product (at least the BMW X5, the BMW i3, and the inner power modules therein) that allegedly infringes a particular claim (claim 7 of the '850 Patent), BMW AG cannot contend that it lacks notice of Arigna's claims. *See Solocron Educ., LLC v. Healthstream, Inc.*, 2016 WL 9137458, at *3 (E.D. Tex. June 7, 2016). Neither can BMW AG contend that Arigna's allegations are contradictory as its Complaint at the very least states a claim for BMW i3 models that contain gasoline engines and states a plausible claim of infringement for electric power modules within the other variants of the BMW i3 which rely on the accused chipset to perform basic functions such as "acceleration" and "driving."[7] (*See* Dkt. No. 1 at ¶ 40, Fig. 9). The Court thus finds that the allegations in Arigna's Complaint are "enough to provide [BMW AG] fair notice of infringement of the ['850 Patent]." *Disc Disease*, 888 F.3d at 1260. Accordingly, BMW AG's Motion under Rule 12(b)(6) regarding Arigna's claims of direct infringement is **DENIED**.

---

[7] As Arigna notes, its Complaint states that the accused "semiconductor device is used in, *as one example*, a vehicle's engine control module to control the throttle plate of the engine." (Dkt. No. 1 at ¶ 26) (emphasis added). Accordingly, Arigna has not affirmatively pled that infringement is limited to vehicles with gasoline engines and thus the Complaint does not present the situation where a patentee pleads allegations that are "inconsistent with and contradict infringement" as discussed in *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1341, 1354 (Fed. Cir. 2021).

18

## 2.  Indirect Infringement

### i.  Underlying Direct Infringement

As a preliminary matter, BMW AG argues that "Arigna's indirect infringement allegations fail at least because . . . Arigna does not sufficiently plead direct infringement." (Dkt. No. 23 at 20; Dkt. No. 34 at 4). As discussed above, the Court finds that Arigna sufficient plead direct infringement and therefore finds this argument unpersuasive. Further, "[t]o state a claim for indirect infringement . . . a plaintiff need not identify a specific direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists." *In re Bill of Lading*, 681 F.3d at 1336. The Complaint identifies BMW dealers and centers as "places of business whereby the infringing automobiles and components are distributed, offered for sale, sold, and serviced." (Dkt. No. 1 at ¶ 17, 41). The Complaint also identifies BMW AG's customers as underlying direct infringers who use the Accused Products and AUIR2085S in an infringing manner by accelerating and driving the vehicle via functions controlled by the accused semiconductor device. (*Id.* at 43–44). The Court finds that the Complaint has sufficiently identified BMW AG dealerships, customers, and vehicle users as underlying direct infringers to sufficiently support a claim for indirect infringement at the 12(b)(6) stage.

### ii.  Induced Infringement

To state a claim for induced infringement, a plaintiff must allege facts to plausibly support the assertion that the defendant specifically intended a third party to directly infringe the plaintiff's patent and knew that the third party's acts constituted infringement. 35 U.S.C. § 271(b); *In re Bill of Lading*, 681 F.3d at 1339. "The requirement that the alleged infringer knew or should have known his actions would induce actual infringement necessarily includes the requirement that he or she knew of the patent." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir.

2006). Knowledge of infringement alone, however, is not enough. "Inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Id.* at 1306.

BMW AG argues that Arigna's inducement claims fail because "the Complaint does not allege (1) BMW AG had the requisite specific intent to induce dealers/Centers to infringe, and allege (2) any nexus between the marketing, user manuals, or online instruction manuals and the '850 Patent." (Dkt. No. 34 at 4). Regarding intent, BMW AG asserts that Arigna fails to show how BMW AG instructs customers to use third-party chips deep within vehicle power components and has not alleged that BMW AG directed dealers to sell products known by BMW AG to infringe. (Dkt. No. 23 at 20–21; Dkt. No. 34 at 4). Regarding instruction materials, BMW AG asserts that Arigna fails to allege that such materials "direct customers to use products *in an infringing manner*" and therefore fail to show BMW AG's specific intent. (Dkt. No. 34 at 5) (citing *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015)).

Arigna responds that it alleged sufficient facts to show BMW AG's intent to induce infringement. (Dkt. No. 31 at 10). With respect to BMW Dealers, Arigna argues that the Complaint alleges active steps to encourage direct infringement because BMW AG "direct[s] and control[s] these authorized dealers' actions, sales, and services . . ., and has consented to these authorized dealers acting on BMW's behalf and being the exclusive places of business [where the Accused Products are sold]." (*Id.*) (citing Dkt. No. 1 at ¶ 17; *Canon, Inc. v. TCL Elecs. Holdings Ltd.*, 2020 WL 1478356, at *5 (E.D. Tex. Mar. 25, 2020)). With respect to BMW customers and drivers, Arigna alleges that it sufficiently plead facts to show that BMW AG encourages vehicle drivers to use the Accused Products in an infringing manner. (*Id.* at 11).

20

The Court finds that the allegations in the Complaint go beyond merely alleging that BMW AG provides instructional materials along with the Accused Products. Here, the Complaint alleges that "BMW continues to actively encourage and instruct its customers and end users (for example, through its marketing, user manuals, and online instruction materials) to use the accused automotive vehicles and components thereof in ways that directly infringe the '850 Patent." (Dkt. No. 1 at ¶ 42). The Complaint further alleges that such infringing use occurs when the customer "use[s] the BMW i3's accelerator pedal" or drives the BMW X5 which activates the AUIR2085S semiconductor's throttle control functions covered by the '850 Patent. (*Id.* at 26, 30, 43). The Complaint provides a figure indicating that BMW AG instructs its customers on how to use the Accused Products in an allegedly infringing manner by accelerating and decelerating the vehicle. (*Id.* at Fig. 10). '[A]ctive steps'" taken to encourage direct infringement "can include 'advertising an infringing use,' 'instructing how to engage in an infringing use,' and assisting in performing an infringing use." *Motiva Patents LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 828 (E.D. Tex. 2019) (quoting *Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1334 (Fed. Cir. 2019)). Accordingly, Arigna's Complaint sufficiently pleads the intent required to support a claim of induced infringement and includes marketing materials with a sufficient nexus to support such intent at the 12(b)(6) stage.

### iii.    Contributory Infringement

To state a claim for contributory infringement, a plaintiff must allege facts to plausibly support the assertion that there was (1) an act of direct infringement; (2) that the defendant knew that the combination for which its components were especially made was both patented and infringed; and (3) the components have no substantial non-infringing use. 35 U.S.C. § 271(c); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005).

BMW AG argues that Arigna alleges without factual support that the Infineon AUIR2085S chipsets "are especially made or especially adapted for uses that infringe the '850 Patent, and not staple articles or commodities of commerce suitable for substantial non-infringing use." (Dkt. No. 23 at 21). BMW AG further argues that its vehicles have substantial non-infringing uses and that the Infineon's datasheet includes other potential applications of the semiconductor in "Automotive 48V DC-DC; Automotive 12V DC-DC; Exhaust; Piezo Injection; and Solenoid Injection, but Arigna only accuses use of the chip in an 'inner power module.'" (*Id.*).

Arigna responds that given "'the nature of the patented technology and the accused systems'—circuits and vehicles/components incorporating semiconductor devices—the Complaint presents 'adequate facts to infer that [BMW's] systems have no use other than to infringe the patents-in-suit.'" (Dkt. No. 31 at 12) (quoting *Norman IP Holdings, LLC v. Lexmark Int'l, Inc.*, 2013 WL 12137843, at *4 (E.D. Tex. Sept. 30, 2013), *rep'tt and rec. adopted*, 2014 WL 12617600 (E.D. Tex. Mar. 31, 2014)). Arigna further argues that the Complaint sufficiently alleges materiality because the accused vehicles "come with the [accused components] installed" and combined with BMW AG's products to operate in an infringing manner. (*Id.*). Finally, Arigna responds that the other applications on the datasheet are irrelevant because the issue is whether the identified components as installed in the accused vehicles have substantial non-infringing uses. (*Id.*) (citing *Tierra Intelectual Borinquen, Inc. v. Toshiba Am. Info. Sys., Inc.*, 2014 WL 605431, at *2 (E.D. Tex. Feb. 14, 2014)).

The Court agrees with Arigna that, in light of the nature of the patented technology and the Accused Products, the Complaint states facts adequate to infer that BMW AG's accused inner power module and vehicles allegedly infringe each time they are used. In its Complaint, Arigna alleges that "vehicles and components thereof that incorporate . . . the Infineon AUIR2085S"

"constitute a material part of the inventions claimed by the '850 Patent" and that such components are "especially made or especially adapted for uses that infringe the '850 Patent, and [are] not staple articles or commodities of commerce suitable for substantial non-infringing use." (Dkt. No. 1 at ¶ 44). The Complaint further alleges that the allegedly infringing AUIR2085S semiconductor is a "automotive-grade, self-oscillating half-bridge driver" with applications in regulating the throttle control of the Accused Products (*Id.* at ¶ 26, 35, 37–38). In short, Arigna has plausibly pled that the Accused Products infringe the asserted patent each time the user drives the vehicle because of the throttle control function of the AUIR2085S chipset. Such allegations are sufficient to allege that the Accused Products are a material part of the invention, have no substantial non-infringing uses, and "raise[s] a reasonable expectation that discovery will reveal" that BMW AG is liable for the misconduct alleged. *See Motorola Mobility LLC*, 2017 WL 3721064, at *5 (citing *Twombly*, 550 U.S. at 556). Accordingly, BMW AG's Motion under Rule 12(b)(6) regarding Arigna's claims of indirect infringement is **DENIED**.

### 3.  Willfulness

In its Complaint, Arigna alleges that "[n]o later than the filing of this Complaint, BMW had actual knowledge of the '850 Patent." (Dkt. No. 1 at ¶ 46). Arigna also alleges that BMW AG "continues to infringe at least claim 7 of the '850 Patent" or "remain[s] willfully blind to the infringement [by its customers and dealerships]" despite having such actual knowledge. (*Id.* at ¶ 33, 43). In light of BMW AG's continued and purportedly infringing activity, Arigna alleges that "BMW's infringement" of the '850 Patent "has been willful and deliberate, at least from the filing of this Complaint." (*Id.* at 16).

BMW AG argues that Arigna's willful infringement claims must be dismissed because they are only mentioned once in the body of the Complaint and once in the prayer for relief, and

any purported facts fail to allege sufficient culpable or egregious conduct to support a claim for willful infringement. (Dkt. No. 23 at 22; Dkt. No. 34 at 5) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S.Ct. 1923, 1932 (2016); *Fractus, S.A. v. TCL Corp.*, 2021 WL 2483155, at *4 (E.D. Tex. June 2, 2021)). Arigna responds that its allegations of willful infringement are found multiple times in the body of the Complaint and distinguishes this case from *Fractus* where the willfulness allegations relied on a pre-suit notice letter rather than the Complaint itself. (Dkt. No. 31 at 14). Finally, Arigna asserts that "it is black-letter law that a party may willfully infringe if, like BMW has here, it continues to infringe after being sued for its infringement." (Dkt. No. 36 at 8) (citing *Ultravision Techs., LLC v. Govision, LLC*, 2020 WL 1158606, at *11 (E.D. Tex. Mar. 9, 2020), *rep't and rec. adopted*, 2020 WL 1528521 (E.D. Tex. Mar. 30, 2020)).

The Court agrees with Arigna that the Complaint states facts sufficient to state a claim for post-suit willful infringement. "Under *Halo*, the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement." *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020). Accordingly, a plaintiff need not plead facts demonstrating egregious conduct to establish a claim for willful infringement at the 12(b)(6) stage. Here, Arigna has alleged that BMW AG has knowledge of the '850 Patent from at least the filing of the Complaint yet continues to carry out allegedly infringing actions. (Dkt. No. 1 at ¶¶ 33, 43, 46). This Court has previously found that allegations that a defendant continues its allegedly infringing conduct even after receiving notice of a complaint is sufficient to at least state a claim for post-suit willful infringement. *See Blitzsafe Texas, LLC v. Volkswagon Grp. of Am., Inc.*, 2016 WL 4778699, at *6–7 (E.D. Tex. Aug. 19, 2016) (finding that a complaint stated a claim for pre-suit willful infringement based on knowledge acquired via PTO filings and separately stated a claim for post-suit willful infringement based on the defendant's continued alleged infringement

after suit was filed). Accordingly, the Court finds BMW AG's 12(b)(6) arguments with respect to post-suit willful infringement unpersuasive.

However, the Court declines to find that BMW AG's post-filing conduct can provide factual support for *pre*-suit willful infringement of the '850 Patent. A claim for willful infringement must allege that infringement was "intentional or knowing." *Plano Encryption Techs., LLC v. Alkami Tech., Inc.*, 2017 WL 8727249, at *2 (E.D. Tex. Sept. 22, 2017). Arigna has only alleged that BMW AG had knowledge of the '850 Patent "at least from the filing of [the] Complaint." (Dkt. No. 1 at 16). Faced with a total absence of facts in the Complaint to suggest that BMW AG had pre-suit knowledge of the '850 Patent, the Court concludes that Arigna has failed to state a claim for pre-suit willful infringement. Accordingly, BMW AG's Motion under Rule 12(b)(6) with respect to Arigna's claims of willful infringement is **GRANTED-IN-PART** regarding Arigna's claims of pre-suit willful infringement and **DENIED-IN-PART** regarding Arigna's post-suit claims of willful infringement.

## IV. CONCLUSION

For the reasons stated herein, BMW AG's Motion to Dismiss under Rule 12(b)(5) is **DENIED**. Further, BMW AG's Motion to Dismiss Arigna's claims of direct and indirect infringement under Rule 12(b)(6) is **DENIED**. However, BMW AG's Motion to Dismiss Arigna's claims of willful infringement is **GRANTED-IN-PART** with respect to Arigna's claims of pre-suit willful infringement and **DENIED-IN-PART** with respect to Arigna's claims of post-suit willful infringement.

Accordingly, it is **ORDERED** that Arigna's allegations of pre-suit willful infringement are **DISMISSED WITHOUT PREJUDICE**.

Arigna is permitted leave during the ensuing **twenty-one (21) days** from the issuance of this Order to amend its pre-suit willfulness allegations through the filing of a subsequently amended complaint. Failure to amend, within twenty-one days or any period extended by the Court, shall constitute a substantive waiver of such pre-suit willful infringement claims by Arigna.

**So ORDERED and SIGNED this 20th day of January, 2022.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE